# Exhibit A



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 2011-03556g

LINDA and MICHAEL BROWNSTEIN,      )
BERNARDINE ANTONUCCI, JOHN R.       )
CHISHOLM,  DENISE A.                )
COLLINSON, DIAN FOX-HINDLEY,        )
ROBERT H. HAAS and BRIGITTE         )
HAAS-BRUINING, STANLEY H.           )
KONEFAL, JR. and JOAN M.            )
WALSH-KONEFAL, SANDRA and           )
MYRON LEVINE as Trustees of THE     )
LEVINE AT NOUVELLE REALTY           )
TRUST, CLAIRE SANDELL, ARLENE       )
and IRVIN STIGLITZ, MONIKA and      )
VINEET VERMANI,                     )
                                    )
            Plaintiffs,             )
                                    )
     v.                             )
                                    )
NATICK RESIDENCE, LLC f/k/a         )
GGP NATICK RESIDENCE, LLC,          )
HOWARD HUGHES CORPORATION,          )
and AARON BARTELS,                  )
                                    )
            Defendants.             )
                                    )

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

OCT 0 5 2011

CLERK

## COMPLAINT AND JURY DEMAND

### i.  Introduction

1.      This is an action for rescission based on fraud and other wrongdoing in

connection with the sale of several residential condominium units (the "Units"), all of which are

located at a large condominium development known as Nouvelle at Natick ("Nouvelle"),

Nouvelle Way, Natick, Middlesex County, Massachusetts.  Specifically, each of the Plaintiffs –

either individually or jointly with a spouse – bought one of the Units in detrimental reliance upon the intentional and/or negligent misrepresentations of Defendants. Accordingly, Plaintiffs now seek rescission of those 11 real estate transactions (the "Transactions").

2.       Plaintiffs Bernardine Antonucci, Linda and Michael Brownstein, John R. Chisholm, Denise A. Barry Collinson, Dian Fox-Hindley, Robert H. Haas and Brigitte Haas-Bruining, Dr. Stanley H. Konefal, Jr. and Joan M. Walsh-Konefal, Sandra and Myron Levine as Trustees of The Levine at Nouvelle Realty Trust, Claire Sandell, Arlene and Irvin Stiglitz, and Monika and Vineet Vermani are each individuals who own one of the residential Units, which are all located in Natick, Massachusetts. Since each of the Plaintiffs ultimately purchased a Unit, either individually or jointly with a spouse, the factual allegations in the Complaint that refer to each of the Plaintiffs taking some action or inaction refer to the Plaintiffs doing so individually or collectively with a spouse. The total, collective number of Units that the Plaintiffs purchased, and that are at issue in this case, is eleven (11).

3.       Defendant Natick Residence LLC f/k/a GGP Natick Residence, LLC ("Natick Residence") is a Delaware Corporation formed on May 26, 2005. During much of the relevant time period, Natick Residence was a wholly owned subsidiary of General Growth Properties, Inc. ("GGP"), and is now, upon information and belief, wholly owned and controlled by Defendant Howard Hughes Corporation. Natick Residence has offices at One Galleria Tower, 13355 Noel Road, Suite 950, Dallas, TX 75240, and its principal office in the Commonwealth is located at 10 Nouvelle Way, Natick, MA 01760.

4.       Howard Hughes Corporation ("HHC") is a publically traded Delaware Corporation, with a place of business located at One Galleria Tower, 13355 Noel Rd., Suite 950,

Dallas, TX 75240.  HHC owns and controls Natick Residence.  HHC is a real estate company created to specialize in the development of master planned communities, the redevelopment or repositioning of real estate assets currently generating revenues, also called operating assets, and other strategic real estate opportunities in the form of entitled and unentitled land and other development rights.

5.     Aaron Bartels is an individual with a last and usual place of address of 10340 S. Leavitt St., Chicago, IL  60643.  Mr. Bartels was Senior Director of Development at General Growth Properties, Inc. and Natick Residence.

## ii.  Jurisdiction and Venue

6.     This Court has jurisdiction over this matter pursuant to G.L. c. 212, §§ 3 & 4; G. L. c. 214, § 1; and G. L. c. 93A, § 9(1).

7.     Plaintiffs all own Units at Nouvelle in Natick, Middlesex County, Massachusetts, and venue is therefore proper in the Middlesex Superior Court under M. G. L. c. 223, §§ 1 & 8(4).  At all times relevant to the factual allegations in this Complaint, each of the Defendants was doing business in Massachusetts and/or engaging in the tortious, unfair, and deceptive conduct of which they are accused in Massachusetts.

## iv.  Facts Common to All Counts

8.     Natick Residence developed Nouvelle as a 215-unit condominium complex.  At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities.  Natick Residences' marketing materials for Nouvelle are replete with such representations.

9.     As a result of Natick Residence's marketing of Nouvelle, each of the Plaintiffs became interested in potentially purchasing a unit at the Nouvelle project. Eventually, after several discussions with Natick Residence's sales personnel and other representatives, each of the Plaintiffs signed a purchase and sale agreement (the "P&S") for one of the Units between April 2007 and September 2008.

10.     Although Plaintiffs each signed a P&S between April 2007 and September 2008, representatives of Natick Residence, including without limitation Mr. Bartels, informed each of the Plaintiffs that the closings on the Units might not take place for many months due to the ongoing construction of Nouvelle.

11.     Indeed, as of the end of September 2008, nearly a year and a half after the first P&S's were signed, Defendants still were not ready, willing, and able to close on the Units.

12.     At approximately this same time, news stories circulated which reported that GGP, the parent of Nouvelle's developer – GGP Natick Residence, LLC – was saddled with billions of dollars in debt, mostly in the form of mortgages.

13.     Then, in early October, after delaying many closings for more than a year, Natick Residence suddenly notified each of the Plaintiffs by letter that they must close immediately – no later than the week between October 31 and November 5, 2008.

14.     As a result of the press concerning GGP's financial condition and the pressure from GGP and Natick Residence to close immediately, each of the Plaintiffs contacted Natick Residence seeking to withdraw from the purchase of the Units or, alternatively, to alter or renegotiate the terms. Among other things, Plaintiffs expressly relayed their concerns to Natick Residence and to Mr. Bartels, personally (and/or to others acting at his direction), that the

apparently impending bankruptcy of GGP would have a negative impact on Nouvelle and drag

the entire project (and the value of their contemplated purchases) down with it.

15.     In response, Natick Residence, Mr. Bartels, and others acting at the direction of

and with the knowledge and approval of Natick Residence and Mr. Bartels, made specific

misrepresentations of fact to each of the Plaintiffs.

16.     Specifically, either in telephone or in person conversations which each of the

Plaintiffs can recall and have identified with specificity in demand letters from their counsel

pursuant to G.L. c. 93A which are attached hereto as Exhibit A and incorporated by reference,

Natick Residence, Mr. Bartels, and others acting at the direction of and with the knowledge and

approval of Natick Residence and Mr. Bartels, made misrepresentations of fact to each of the

Plaintiffs.

17.     The misrepresentations included without limitation, the following: (a) that Natick

Residence and Nouvelle were not in any financial difficulty because the project was privately

funded by the Bucksbaums – the founding family of GGP – and not by GGP itself; (b) that

Natick Residence and the Nouvelle project did not have any construction debt, nor were any

construction monies or loans outstanding on the project; and (c) that the debt-free/privately

funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick

Residence/Nouvelle should not be affected or involved.

18.     At the time that Natick Residence, Mr. Bartels, and others acting at the direction

of and with the knowledge and approval of Natick Residence and Mr. Bartels made these

misrepresentations of fact, they knew or should have known that they were false, but they made

the misrepresentations anyway intentionally, knowingly, and willfully in an attempt to induce each of the Plaintiffs to close on the Units.

19.     In conjunction with making these misrepresentations, Natick Residence, Mr. Bartels, and others acting at the direction of and with the knowledge and approval of Natick Residence and Mr. Bartels refused to extend the closing date by even one day or to otherwise alter any of the terms of the closing or purchase.

20.     In addition, sales staff, who worked under the supervision and control of Natick Residence and Mr. Bartels, misrepresented to the Plaintiffs that some 35-40 units at Nouvelle were then already under contract.  In the end only 17 purchasers closed on units – a significant decrease in actual purchasers and vital information that would have also affected the Plaintiffs' decision to go forward with their purchase.

21.     On November 12, 2008, barely two weeks after Natick Residence, Mr. Bartels, and others acting at the direction of and with the knowledge and approval of Natick Residence and Mr. Bartels induced Plaintiffs to close without delay based upon their misrepresentations, and other efforts to strong arm the Plaintiffs into closing on the Units, the general contractor for the project, Dimeo Construction Company ("Dimeo"), filed a notice of contract on the project for unpaid debts owing from Natick Residence and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit.

22.     Natick Residence and Mr. Bartels knew or should have known of the massive construction debt on the Nouvelle project at the very same time they were misrepresenting to the Plaintiffs, and directing others to misrepresent to the Plaintiffs, that there was no construction debt on the Project.

23.     Most of the Plaintiffs also asked Natick Residence if options existed to

renegotiate P&Ss, but Natick Residence falsely denied to those Plaintiffs that any other options

existed when, in fact, Natick Residence and Mr. Bartels knew that Natick Residence had institute

an Extended Option Program ("EOP") for other purchasers, which included a lease-to-own

agreement, delayed closings, and a refund of deposit if no sale resulted from the agreement.

24.     Natick Residence and Mr. Bartels intentionally kept this information from these

Plaintiffs.

25.     The several, intentional misrepresentations of Natick Residence and Mr. Bartels

were grounded apparently in the wrongful motive of forcing the Plaintiffs to close before any

liens were filed on the project.  These defendants also pressured the Plaintiffs to close even

though, unbeknownst to the Plaintiffs, the project was not only financially unsound, but

physically unsafe as well.

26.     For example, there was no heat in the hallways (ultimately for six months – from

November through winter and into the spring) as the air handlers had not been connected on the

roof, elevators were totally unreliable, many smoke detectors were still wrapped in plastic due to

construction dust, and the primary sewer ejector for the building did not have an operational

back-up pump, so when it failed, sewage backed up into the garage leaving cars sitting in raw

waste.  This also caused severe damage to at least one of the Plaintiffs' Units.  Mail could not be

delivered for more than a month after the Plaintiffs moved in.

27.     In addition, and contrary to the representations of Natick Residence and Mr.

Bartels (or others acting at their instruction) that the project was privately financed (and,

therefore, not going to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in

April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP.

28.    Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Units being sold for less than 50 percent of the price that the Plaintiffs paid in reliance upon Natick Residence's and Mr. Bartels' misrepresentations.

29.    Had Natick Residence and Mr. Bartels made accurate representations to the Plaintiffs about the tenuous financial condition of Nouvelle and Natick Residence, the Plaintiffs would not have closed on the purchases of the Units.  In every case, Plaintiffs purchase of their respective Units was based upon each of the Plaintiffs believing that it was a good real estate purchase based upon the false assurances and misrepresentations of Natick Residence and Mr. Bartels.

30.    In or about April 16, 2009, GGP filed for voluntary bankruptcy and, contrary to the false representations of Natick Residence and Mr. Bartels, the bankruptcy dragged Natick Residence (and the Nouvelle project) into bankruptcy as well.  Ultimately, Natick Residence was forced to resort to auctioning off unsold units at Nouvelle at a "fire sale" under distressed circumstances.

31.    On October 4, 2009 some 42 units were sold at auction for 40-60 percent the original asking price; later auctions in the Boston area yielded closer to 25-30 percent of the original asking price.

8

32.     Other prospective purchasers whom Natick Residence had chosen to inform of the EOP, and who had taken advantage of the program, were either able to abandon plans to purchase or buy at "fire sale" prices.

33.     After GGP and Natick Residence went into bankruptcy, Plaintiffs each preserved their claims against Natick Residence, by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. The Bankruptcy Court gave each of the Plaintiffs permission to pursue their claims in the appropriate non-bankruptcy arena against Natick Residence.

34.     As previously alleged, by letter from their counsel dated June 13, 2011, each of the Plaintiffs individually sent demand letters under G. L. c. 93A, § 9(3) to Defendants, reasonably describing the deceit and other unfair and deceptive acts or practices committed by the defendants and the injury suffered by each plaintiff. None of the Defendants made reasonable offers of settlement in advance and none of the Defendants made any good faith efforts to investigate the claims before refusing to make an offer of settlement.

35.     In addition, HHC has threatened retaliation against the Plaintiffs for bringing their claims as set forth in this lawsuit.

### v.  Counts

### COUNT I:  MISREPRESENTATION/FRAUD

36.     Plaintiffs incorporate the foregoing paragraphs.

37.     As set forth above, Natick Residence and Aaron Bartels (or others acting at their express direction) made material misrepresentations of fact regarding the financial condition of the Nouvelle Project to each of the Plaintiffs in order to induce Plaintiffs to close on the Units.

38.     At the time they made the misrepresentations (or directed them to be made), Natick Residence and Aaron Bartels knew or should have known they were false, or made the false statements reckless or negligently.

39.     Each of the Plaintiffs reasonably and detrimentally relied upon the misrepresentations by closing on the Units and were therefore damaged in amounts to be proven at trial.

## COUNT II: VIOLATION OF G.L. c. 93A

40.     Plaintiffs incorporate the foregoing paragraphs.

41.     At all times relevant to this complaint, Defendants were engaged in trade or commerce in the Commonwealth of Massachusetts.

42.     The misrepresentations of Natick Residence and Mr. Bartels and the threats of retaliation by HHC to the Plaintiffs for asserting their claims constitute unfair and deceptive acts within the meaning of G.L. c. 93A and Defendants unfair and deceptive conduct was all undertaken knowingly and willfully for the purpose of inducing Plaintiffs to close on the Units.

43.     Defendants' unfair and deceptive conduct damaged Plaintiffs in amounts to be proven at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court

1.      Enter judgment in favor of Plaintiffs and against Defendants on all counts of the Complaint;

2.      Order the rescission of all purchases of the Units;

3.    Award Plaintiffs all direct, consequential, and benefit-of-the-bargain damages that

       Plaintiffs;

4.    Award Plaintiffs their attorneys' fees and multiple damages;

5.    Award Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs claim a right to a trial by jury on all issues and claims so triable.

> LINDA and MICHAEL BROWNSTEIN,
> BERNARDINE ANTONUCCI, JOHN R.
> CHISHOLM, DENISE A. COLLINSON, DIAN
> FOX-HINDLEY, ROBERT H. HAAS,
> BRIGITTE HAAS-BRUINING, STANLEY H.
> KONEFAL, JR., JOAN M. WALSH-
> KONEFAL, SANDRA G. LEVINE AND
> MYRON LEVINE as Trustees of THE LEVINE
> AT NOUVELLE REALTY
> TRUST, CLAIRE SANDELL,
> ARLENE and IRVIN STIGLITZ,
> MONIKA and VINEET
> VERMANI,
>
> By their attorneys,
>
>
> _____
> Tyler E. Chapman (BBO # 637852)
> tchapman@toddweld.com
> Michael Thad Allen (BBO #679795)
> mallen@toddweld.com
> TODD & WELD, LLP
> 28 State Street, 31st Floor
> Boston, MA  02109
> (617) 720-2626

Date: October 3, 2011

# **EXHIBIT A**

# TODD & WELD LLP
### ATTORNEYS AT LAW
### 28 STATE STREET
### BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One GalleriaTower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA  01760 | 84 State Street |
| Dallas, TX  75240 | | Boston, MA  02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by Linda and Michael Brownstein (the "Brownsteins") to represent them with respect to certain causes of action relating to their purchase of 713 South at Nouvelle at Natick ("Nouvelle"), 10 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to the Brownsteins in order to induce them to purchase the Unit. The Brownsteins now intend to seek relief for the damages they have suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of their purchase of the Unit. This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, the Brownsteins became interested in potentially purchasing a unit at the Nouvelle project. Eventually, after several discussions with Natick Residence's sales personnel and other representatives, on April 3, 2007, the Brownsteins signed a purchase and sale agreement (the "P&S") for the Unit – a three-bedroom, two-bathroom condominium with a total of 1,774 square feet. There is also a small balcony attached to the Unit, a storage cage on the fifth floor and two underground parking spaces that are assigned by deed to this Unit.

Although the Brownsteins signed the P&S in April 2007, Natick Residence informed them that the closing might not take place for many months due to the ongoing construction of Nouvelle. Indeed, as of the end of September 2008, nearly a year and a half later, the Brownsteins still had not closed on the Unit. Natick Residence finally sent the Brownsteins a letter stating that the closing on the Unit would be October 31, 2008. Following receipt of this letter, on October 9, 2008, the Brownsteins called Mr. Bartels to notify Natick Residence and Mr. Bartels that the Brownsteins were not going to close on the purchase of the Unit. Specifically, in a three-way telephone conversation lasting more than one half hour, the Brownsteins informed Mr. Bartels that they had read some of the news coverage concerning the potential bankruptcy of Natick Residence's then-parent, General Growth Properties ("GGP"). In light of the apparent warning signs concerning GGP's overall financial health as well as the still-unfinished nature of the project as a whole, the Brownsteins asked Mr. Bartels to extend the closing date to give the Brownsteins time to further assess the situation with GGP and the completion of Nouvelle.

In response, Mr. Bartels expressly sought to allay the Brownsteins' concerns about the financial condition of Natick Residence and its parent and about the status of the Nouvelle project. He did so by making a series of misrepresentations, including without limitation the following:

- That Natick Residence and the Nouvelle project were not in any financial difficulty because the project was privately funded by the Bucksbaums – the founding family of GGP – and not by GGP itself.

- That Natick Residence and the Nouvelle project did not have any construction debt, nor were any construction monies or loans outstanding on the project.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

-    That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that
     even if GGP filed bankruptcy, Natick Residence/Nouvelle should not be affected or
     involved.

        Not only did Natick Residence/Mr. Bartels make these false statements of fact to the
Brownsteins, he also refused to extend the closing date by even one day.  While the Brownsteins
were disappointed in Mr. Bartels' refusal to extend the time to close, particularly given the
closing delays already occasioned by Natick Residence, the Brownsteins reasonably relied upon
Mr. Bartels' representations (a) that Natick Residence/Nouvelle was independently financed (and
therefore insulated from GGP's financial problems), (b) that there were no outstanding financial
obligations relating to the construction of the project, (c) that any bankruptcy of GGP should not
affect Nouvelle.  In addition, sales staff, who worked under Natick Residence/Mr. Bartels'
supervision and control, represented to the Brownsteins that some 35-40 units at Nouvelle were
then already under contract.  In the end only 17 purchasers closed on units – a significant
decrease in actual purchasers and vital information that would have also affected the
Brownsteins' decision to go forward with their purchase.  The Brownsteins paid cash of
$1,002,245 for the Unit with a total upfront deposit of $104,045, which included a 10% deposit
plus payment for upgrades.

        On November 12, 2008, barely two weeks after the Brownsteins were induced to close
without delay by Mr. Bartels' misrepresentations, the general contractor for the project, Dimeo
Construction Company ("Dimeo"), placed a lien on the project and began taking money from
subsequent unit sales as a condition of releasing the partial lien on each unit.  Plainly, Mr. Bartels
was aware of the dire financial circumstances facing the project, including the impending Dimeo
lien, when he made intentional misrepresentations to the contrary to the Brownsteins.  Mr.
Bartels' intentional misrepresentations are grounded apparently in the wrongful motive of
forcing the Brownsteins to close before any liens were filed on the project.  He also pressured the
Brownsteins to close even though, unbeknownst to the Brownsteins, the project was not only
financially unsound, but physically unsafe as well.  For example, there was no heat in the
hallways (ultimately for six months – from November through winter and into the spring) as the
air handlers had not been connected on the roof, elevators were totally unreliable, many smoke
detectors were still wrapped in plastic due to construction dust, and the primary sewer ejector for
the building did not have an operational back-up pump, so when it failed, sewerage backed up
into the garage leaving cars sitting in raw waste.  Mail could not be delivered for more than a
month after the Brownsteins moved in.

        In addition, contrary to Mr. Bartels' representation that the project was privately financed
(and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared
bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy
with the rest of GGP.  Ultimately, Natick Residence was forced to resort to auctioning off the
unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

being sold for less than 50 percent of the price that the Brownsteins paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Mr. Bartels made accurate representations to the Brownsteins about the tenuous financial condition of Nouvelle and Natick Residence, the Brownsteins would not have closed on the purchase of the Unit. They already owned another condominium and thus had no urgency to move. Their purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Mr. Bartels.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My clients already preserved their foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. The Brownsteins have been given permission by the Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make the Brownsteins whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Brownsteins prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Mr. Bartels' misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Brownsteins for the prosecution of this action under Chapter 93A. If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 5

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel.  In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Herlitz and Weinreb:

This office has been retained by Bernardine Antonucci ("Ms. Antonucci") to represent her with respect to certain causes of action relating to her purchase of unit 649 North at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Jane Sheehy ("Ms. Sheehy"), made fraudulent misrepresentations to Ms. Antonucci in order to induce her to purchase the Unit. Ms. Antonucci now intends to seek relief for the damages she has suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of her purchase of the Unit. This letter is being sent to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, Ms. Antonucci became interested in potentially purchasing a unit at the Nouvelle project. Eventually, after several discussions with Natick Residence's sales personnel and other representatives, on January 26,

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

2008, Ms. Antonucci signed a purchase and sale agreement (the "P&S") for the Unit – a three-bedroom, two-bathroom condominium. There is a storage cage and two underground parking spaces that are assigned by deed to this Unit.

In October 2008, Ms. Antonucci became concerned upon reading the extensive news coverage concerning the financial instability of Natick Residence's then-parent, General Growth Properties ("GGP"). Throughout the month of October, Ms. Antonucci made weekly trips to the Nouvelle sales office to inquire about the effects of a potential GGP bankruptcy.

During each visit to the sales office, Ms. Sheehy told Ms. Antonucci that the buyers of Nouvelle units had no reason to be concerned. Throughout the month of October 2008 and specifically on October 16, 2008, Ms. Sheehy expressly sought to allay Ms. Antonucci's concerns about the financial condition of Natick Residence and its parent and about the status of the Nouvelle project. She did so by making a series of misrepresentations, including without limitation the following:

- That Natick Residence and the Nouvelle project was a sound company, without financial difficulty, because the project was fully funded.

- That Natick Residence and the Nouvelle project were not in debt, nor were any monies or loans outstanding on the project.

- That the debt-free/fully funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick Residence/Nouvelle should not be affected or involved.

In addition, sales staff, who worked under Natick Residence/Ms. Sheehy's supervision and control, continually represented to Ms. Antonucci that some 30-40 units at Nouvelle were then already under contract. In the end only 17 purchasers closed on units – a significant decrease in actual purchasers and vital information that would have also affected Ms. Antonucci's decision to go forward with their purchase. Ms. Antonucci reasonably relied upon Natick Residence/Ms. Sheehy's representations (a) that Natick Residence/Nouvelle was independently financed (and therefore insulated from GGP's financial problems), (b) that there were no outstanding financial obligations, (c) that any bankruptcy of GGP should not affect Nouvelle, and (d) that 30 to 40 units were under contract. Ms. Antonucci purchased her Unit in cash for $900,950 on October 31, 2008.

Contrary to Ms. Sheehy's representation that the project was privately financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for almost half of the price Ms. Antonucci paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Ms. Sheehy made accurate representations to Ms. Antonucci about the tenuous financial condition of Nouvelle and Natick Residence, Ms. Antonucci would not have closed on the purchase of the Unit. Her purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Ms. Sheehy.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My client already preserved her foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. Ms. Antonucci has been given permission by the Bankruptcy Court to pursue her claims in the appropriate non-bankruptcy arena. She intends to pursue such claims in the event Natick Residence does not agree to make Ms. Antonucci whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if Ms. Antonucci prevails at trial, she may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what she paid for the Unit in reliance upon Ms. Sheehy's misrepresentations and the true value of what she received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by Ms. Antonucci for the prosecution of this action under Chapter 93A. If forced to file suit, my client will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my client may have, including without limitation claims under the common law.

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4


    I look forward to hearing from you or your counsel.  In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

                    Sincerely,

                    Tyler E. Chapman

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA  01760 | 84 State Street |
| Dallas, TX  75240 | | Boston, MA  02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by John R. Chisholm ("Mr. Chisholm") to represent him with respect to certain causes of action relating to his purchase of unit 831 at Nouvelle at Natick ("Nouvelle"), Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to Mr. Chisholm in order to induce him to purchase the Unit. Mr. Chisholm now intends to seek relief for the damages he has suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of his purchase of the Unit. This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, on November 28, 2007, Mr. Chisholm signed a purchase and sale agreement (the "P&S") for the Unit – a condominium with a total of 1,508 square feet. There is also a storage cage and two underground parking spaces that are assigned by deed to this Unit.

In October 2008, Mr. Chisholm became aware of a potential bankruptcy of Natick Residence's then-parent, GGP. Concerned by this information, on October 22, 2008, Mr. Chisholm contacted Jane Sheehy ("Ms. Sheehy"), the sales director for Nouvelle. Mr. Chisholm asked Ms. Sheehy about the probability of a bankruptcy and its potential impact on the pricing and maintenance of the Nouvelle property. Ms. Sheehy told Mr. Chisholm that he had no reason to worry. She then misrepresented to Mr. Chisholm that 31 units already were under contract at Nouvelle. She warned Mr. Chisholm, however, that if Mr. Chisholm did not close on the Unit, he would forfeit his deposit. Additionally, Ms. Sheehy recommended that Mr. Chisholm speak with Mr. Bartels regarding his issues with the project.

Mr. Chisholm followed Ms. Sheehy's advice and contacted Mr. Bartels with his concerns prior to closing on the Unit. Specifically, Mr. Chisholm outlined his concerns and then requested that Mr. Bartels reduce the purchase price of the Unit or reduce the amount of up-front financial commitment for the Unit in light of the risks posed by a GGP bankruptcy.

In response, Mr. Bartels expressly sought to allay Mr. Chisholm's concerns about the financial condition of Natick Residence and about the status of the Nouvelle project. He did so by making a series of misrepresentations, including without limitation the following:

- That Natick Residence and the Nouvelle project were not in debt, aside from minor liens filed by contractors.

- That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick Residence/Nouvelle should not be affected or involved.

Not only did Natick Residence/Mr. Bartels make these false statements of fact to Mr. Chisholm, he also refused to accommodate Mr. Chisholm in any of his requests. In addition, sales staff, who worked under Natick Residence/Mr. Bartels' supervision and control, continually represented to Mr. Chisholm that 31 units at Nouvelle were then already under contract. In the end only 17 purchasers closed on units – a significant decrease in actual

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

purchasers and vital information that would have also affected Mr. Chisholm's decision to go forward with their purchase. In reasonable reliance upon the misrepresentations of Natick Residence/Mr. Bartels, Mr. Chisholm purchased the Unit for $859,900.00.

Contrary to Mr. Bartels' representation that the project was privately financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for almost half of the price that Mr. Chisholm paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Mr. Bartels made accurate representations to Mr. Chisholm about the tenuous financial condition of Nouvelle and Natick Residence, Mr. Chisholm would not have closed on the purchase of the Unit. Mr. Chisholm's purchase of the Unit was based upon his believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Mr. Bartels.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My client already preserved his foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. Mr. Chisholm has been given permission by the Bankruptcy Court to pursue his claims in the appropriate non-bankruptcy arena. He intends to pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make Mr. Chisholm whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if Mr. Chisholm prevails at trial, he may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, his "benefit of the bargain" damages (measured as the difference between what he paid for the Unit

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

in reliance upon Mr. Bartels' misrepresentations and the true value of what he received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by Mr. Chisholm for the prosecution of this action under Chapter 93A. If forced to file suit, my client will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA01760 | 84 State Street |
| Dallas, TX75240 | | Boston, MA02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by Denise A. Barry Collinson ("Ms. Collinson") to represent her with respect to certain causes of action relating to her purchase of unit 341 North at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to Ms. Collinson in order to induce her to close on her purchase of the Unit. Ms. Collinson now intends to seek relief for the damages she has suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of her purchase of the Unit. This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

 Natick Residence developed Nouvelle as a 215-unit condominium complex.  At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities.  Natick Residences' marketing materials for Nouvelle are replete with such representations.

 As a result of Natick Residence's marketing of Nouvelle, Ms. Collinson became interested in potentially purchasing a unit at the Nouvelle project.  Eventually, after discussions with Melissa Flamburis ("Ms. Flamburis"), a Natick Residence real estate broker, Ms. Collinson signed a purchase and sale agreement on September 9, 2008 (the "P&S") for the Unit – a two-bedroom plus study, two-bathroom condominium with a total of 1,573 square feet.  There is also a storage cage adjacent to the Unit and two underground parking spaces that are assigned by deed to this Unit.

 On September 9, 2008, the same day that Ms. Collinson signed the P&S, the Nouvelle sales office and GGP hosted a cocktail reception at restaurant Sel De la Terre for potential purchasers who had signed purchase and sale agreements.  There, Ms. Collinson spoke with Mr. Bartels and Mark Baumgarten ("Mr. Baumgarten") about the news coverage concerning a potential default of a large note by Natick Residence's then-parent, GGP.  Ms. Collinson inquired as to how a GGP bankruptcy may impact the Nouvelle project.  In response, Mr. Bartels and Mr. Baumgarten reassured Ms. Collinson that she had nothing to be concerned about and did so by proceeding to make several factual misrepresentations, including without limitation (1) that the Nouvelle project was paid for with cash; (2) that Nouvelle did not have any debt; and (3) that there were no problems with the financial stability of Nouvelle or GGP.

 In reasonable reliance upon these factual representations, Ms. Collinson used her personal savings along with a $100,000 mortgage to purchase the Unit.  Initially, Ms. Collinson obtained a $100,000 preapproved loan with Bank of America.  Approximately two weeks prior to Ms. Collinson's closing date, however, Bank of America notified her that it could not provide the mortgage because an insufficient number of units at Nouvelle had been sold or were under agreement to be purchased.  This surprised Ms. Collinson, as Ms. Flamburis previously represented to Ms. Collinson that 33 units were under agreement to be sold and that Ms. Collinson would need to place a deposit on the Unit quickly because others were also interested in purchasing the same Unit.

 Immediately after receiving this news from Bank of America, Ms. Collinson telephoned Jane Sheehy ("Ms. Sheehy"), the head of sales for GGP.  Ms. Collinson expressed to Ms. Sheehy that she was very concerned about the state of the Nouvelle project in light of what she learned from the bank.  She also asked Ms. Sheehy to request that Nouvelle lower her purchase price by $100,000 so that she would not need the mortgage.  In response, Ms. Sheehy refused to lower the purchase price and made several more misrepresentations about the financial condition of Natick

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

Residence and about the status of the Nouvelle project. These misrepresentations were, without limitation, the following:

- That Natick Residence and the Nouvelle project were not in any financial difficulty because the project was paid for with cash.

- That Natick Residence and the Nouvelle project were not in debt.

- That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that a potential GGP bankruptcy would not affect the Natick Residence/Nouvelle.

- Nouvelle had approximately 33 units sold or pending sale and negotiations were in the process with several other interested buyers.

Later that day, Ms. Sheehy and Kevin Ahearn called Ms. Collinson back. They stated that they were able to arrange a mortgage with Wells Fargo, with whom Nouvelle had a banking relationship and that Mr. Bartels would not agree to the reduction in purchase price. Additionally, they informed Ms. Collinson that the closing for the Unit would be in two weeks.

Ms. Collinson had contemplated backing out of the P&S and would have done so but for these false assurances from Natick Residence's false representations. In addition, sales staff, who worked under Natick Residence/Mr. Bartels' supervision and control, continually represented to Ms. Collinson that 33 units at Nouvelle were then already under contract. In the end, only 17 purchasers closed on units – a significant decrease in actual purchasers and vital information that would have also affected Ms. Collinson's decision to go forward with her purchase. The total purchase price of the Unit was $774,900. Ms. Collinsons paid $674,900 of this in cash and the remainder was financed through a $125,000 Wells Fargo mortgage that Natick Residence lined up for her with a total upfront deposit of $77,490.

Contrary to Natick Residence's/Mr. Bartels' representation that the project was privately financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for almost half of the price that Ms. Collinson paid based upon Natick Residence's misrepresentations.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My client already preserved her foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. Ms. Collinson has been given permission by the Bankruptcy Court to pursue her claim in the appropriate non-bankruptcy arena. She intends to pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make Ms. Collinson whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if Ms. Collinson prevails at trial, she may be entitled to one or more of the following remedies, without limitation: rescission of her purchase of the Unit, her "benefit of the bargain" damages (measured as the difference between what she paid for the Unit in reliance upon Mr. Bartels' misrepresentations and the true value of what she received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Ms. Collinson for the prosecution of this action under Chapter 93A. If forced to file suit, my client will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my client may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP
### ATTORNEYS AT LAW
### 28 STATE STREET
### BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Herlitz and Weinreb:

This office has been retained by Dian Fox- Hindley ("Ms. Fox-Hindley") to represent her with respect to certain causes of action relating to her purchase of Terraces 734 at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Jane Sheehy ("Ms. Sheehy"), made fraudulent misrepresentations to Ms. Fox-Hindley in order to induce her to purchase the Unit. Ms. Fox-Hindley now intends to seek relief for the damages she has suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of her purchase of the Unit. This letter is being sent to you as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, Ms. Fox-Hindley became interested in potentially purchasing a unit at the Nouvelle project. Eventually, after several

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

discussions with Natick Residence's sales personnel and other representatives, on September 27, 2007, Ms. Fox-Hindley signed a purchase and sale agreement (the "P&S") for the Unit – a one-bedroom, one-study, two-bathroom condominium with a total of 1,041 square feet. There are also a storage cage on the third floor and an underground parking space that are assigned by deed to this Unit.

By late fall of 2007, Ms. Fox-Hindley was aware of the decline in the real estate market. Concerned that this decline might affect the Nouvelle project, Ms. Fox-Hindley regularly contacted the Nouvelle sales office to inquire about the status of the sales of Nouvelle units. The persons she spook to in the sales office, including without limitation Jane Sheehy ("Ms. Sheehy"), consistently assured Ms. Fox-Hindley that sales were good, stating that 30 units had sold or, alternately, that fifteen to twenty percent had been sold. Confirming what Ms. Sheehy had said to Ms. Fox-Hindley directly, on September 30, 2007 the *Worcester Telegram-Gazette* quoted Jane Sheehy in an interview in which Ms. Sheehy stated that 20% of the Nouvelle units were reserved for purchase.

In early May 2008, Ms. Fox-Hindley heard that construction on the Nouvelle project would be suspended due to insufficient sales of Nouvelle units. Ms. Fox-Hindley immediately called Ms. Sheehy to ask her whether what she had heard was true. In response, Ms. Sheehy assured Ms. Fox-Hindley that the rumor was not true and there were no problems with the project. Further, Ms. Sheehy misrepresented to Ms. Fox-Hindley that the (1) the Nouvelle project was on completely sound financial footing, (2) that the Nouvelle project was not in financial trouble, and (3) that sales were sufficient to date to sustain the project.

Thereafter, Ms. Fox-Hindley had subsequent conversations with Ms. Sheehy and others in the Natick Residence sales office which re-confirmed the substance of Ms. Sheehy's prior misrepresentations. In reasonable reliance upon these misrepresentations, Ms. Fox-Hindley closed on the purchase of the Unit on November 5, 2008.

On November 12, 2008, just days after Ms. Fox-Hindley was induced to close by Ms. Sheehy's misrepresentations, the general contractor for the project, Dimeo Construction Company ("Dimeo"), placed a lien on the project and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit.

Contrary to Ms. Sheehy's representation that the project was financially stable, when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for almost 50 percent of the price that Ms. Fox-Hindley paid based upon Natick Residence's misrepresentations.

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

Had Natick Residence made accurate representations to Ms. Fox-Hindley about the tenuous financial condition of Nouvelle and Natick Residence, Ms. Fox-Hindley would not have closed on the purchase of the Unit. Her purchase of the Unit was based upon her believing that it was a good real estate purchase based upon the false assurances of Natick Residence.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My client already preserved her foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. Ms. Fox-Hindley has been given permission by the Bankruptcy Court to pursue her claims in the appropriate non-bankruptcy arena. She intends to pursue such claims in the event Natick Residence does not agree to make Ms. Fox-Hindley whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if Ms. Fox-Hindley prevails at trial, she may be entitled to one or more of the following remedies, without limitation: rescission of her purchase of the Unit, her "benefit of the bargain" damages (measured as the difference between what she paid for the Unit in reliance upon Natick Residence's misrepresentations and the true value of what she received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by Ms. Fox-Hindley for the prosecution of this action under Chapter 93A. If forced to file suit, my client will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my client may have, including without limitation claims under the common law.

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4


I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by Robert H. Haas and Brigitte Haas-Bruining (the "Haases") to represent them with respect to certain causes of action relating to their purchase of Terraces unit 936 at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to the Haases in order to induce them to purchase the Unit. The Haases now intend to seek relief for the damages they have suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of their purchase of the Unit. This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, the Haases became interested in potentially purchasing a unit at the Nouvelle project. Eventually, after several discussions with Natick Residence's sales personnel and other representatives, on May 3, 2007, the Haases signed a purchase and sale agreement (the "P&S") for the Unit – a two-bedroom plus study, two-bathroom condominium with a total of 1,472 square feet. There is also a storage cage and two underground parking spaces that are assigned by deed to this Unit.

In October 2008, the Haases read the extensive news coverage concerning the financial problems of Natick Residence's then-parent, GGP. Concerned by this news coverage, the Haases requested from the Nouvelle sales office on October 8, 2008 that GGP provide them with a letter stating that the residents of Nouvelle would not be impacted by any potential consequences of GGP's current financial instability. With no response, the Haases repeated their request on October 23, 2008 and emphasized that they wanted this letter prior to their closing date of November 3, 2008. The next day, on October 24, 2008, Mr. Bartels telephoned the Haases to tell them that he was unable to provide them with the requested letter because his superiors in the GGP Chicago office would not allow him to do so. The Haases reiterated their concerns regarding a potential GGP bankruptcy and expressed their hesitation to complete the purchase of the Unit without such assurance from GGP.

In response, Mr. Bartels expressly sought to allay the Haases' concerns about the financial condition of Natick Residence and its parent and about the status of the Nouvelle project. He did so by making a series of misrepresentations during this telephone call, including without limitation the following:

- That Natick Residence and the Nouvelle project were not in any financial difficulty because the project was independently funded.

- That Natick Residence and the Nouvelle project were not in debt because the project was fully funded

- That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that all was well with Nouvelle project and that there was no reason for concern over GGP's financial problems.

Not only did Natick Residence/Mr. Bartels make these false statements of fact to the Haases, he also warned them that if they did not close on the purchase of the Unit on November

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

3, 2008, the Haases would lose their $77,590.00 deposit.  In addition, sales staff, who worked under Natick Residence/Mr. Bartels' supervision and control, had represented to the Haases throughout September and October 2008 that 38 units at Nouvelle were sold.  In reasonable reliance on the representations of Natick Residence/Mr. Bartels, the Haases paid cash of $776,800.00 for the Unit with a total upfront deposit of $77, 590.00.

On November 12, 2008, less than two weeks after the Haases were induced to close without delay by Natick Residence's/Mr. Bartels' misrepresentations, the general contractor for the project, Dimeo Construction Company ("Dimeo"), placed a lien on the project and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit. Plainly, Mr. Bartels was aware of the dire financial circumstances facing the project, including the impending Dimeo lien, when he made intentional misrepresentations to the contrary to the Haases.  Mr. Bartels' intentional misrepresentations were grounded apparently in the wrongful motive of forcing the Haases to close before any liens were filed on the project.

In addition, contrary to Mr. Bartels' representation that the project was privately financed, when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP.  Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for almost half of the price that the Haases paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Mr. Bartels made accurate representations to the Haases about the tenuous financial condition of Nouvelle and Natick Residence, the Haases would not have closed on the purchase of the Unit.  Their purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Mr. Bartels.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983).  A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together.  See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955).  In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees.  See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My clients already preserved their foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

the Southern District of New York. The Haases have been given permission by the Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make the Haases whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Haases prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Mr. Bartels' misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Haases for the prosecution of this action under Chapter 93A. If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
|---|---|---|
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re:  Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A

Dear Messrs. Herlitz and Weinreb:

This office has been retained by Stanley H. Konefal, Jr. and Joan M. Walsh-Konefal (the "Konefals") to represent them with respect to certain causes of action relating to their purchase of unit 443 North at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation, sales director, Jane Sheehy ("Ms. Sheehy"), made fraudulent misrepresentations to the Konefals in order to induce them to purchase the Unit. The Konefals now intend to seek relief for the damages they have suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of their purchase of the Unit. This letter is being sent to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

As a result of Natick Residence's marketing of Nouvelle, the Konefals became interested in purchasing a unit at the Nouvelle project. On September 11, 2007, the Konefals signed a purchase and sale agreement (the "P&S") for the Unit – a two-bedroom, two-bathroom condominium with a total of 1,545 square feet. There is also a storage cage and two underground parking spaces that are assigned by deed to this Unit.

In October 2008, the Konefals became concerned upon reading the extensive news coverage concerning the potential bankruptcy of Natick Residence's then-parent, General Growth Properties ("GGP"). From the beginning of October 2008 up to the day before the Konefals' closing on November 3, 2008, the Konefals made four trips to the Nouvelle sales office to inquire about the effects of a potential GGP bankruptcy. At this point, the Konefals were considering abandoning the P&S agreement and forfeiting their $85,000.00 deposit because they feared a greater loss upon a GGP bankruptcy. Additionally, the Konefals asked Ms. Sheehy to extend their closing date to give the Konefals time to further assess the situation with GGP and the completion of Nouvelle.

During each visit, the Konefals spoke to Ms. Sheehy, who told them that she had many conversations with Mr. Bartels and that the buyers of Nouvelle units had no reason to be concerned. Ms. Sheehy expressly sought to allay the Konefals' concerns about the financial condition of Natick Residence and its parent and about the status of the Nouvelle project. She did so by making a series of misrepresentations, including without limitation the following:

- That Natick Residence and the Nouvelle project was a sound company, without financial difficulty, because the project was privately funded and had been paid for "in cash."

- That Natick Residence and the Nouvelle project were not in debt, nor were any monies or loans outstanding on the project.

- That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick Residence/Nouvelle should not be affected or involved.

Not only did Natick Residence/Ms. Sheehy make these false statements of fact to the Konefals, she also refused to extend the closing date. While the Konefals were disappointed in Ms. Sheehy's refusal to extend the time to close, the Konefals reasonably relied upon Ms. Sheehy's representations (a) that Natick Residence/Nouvelle was independently financed (and therefore insulated from GGP's financial problems), (b) that there were no outstanding financial obligations relating to the construction of the project, (c) that any bankruptcy of GGP should not affect Nouvelle. The Konefals purchased the Unit for $852,245.00.

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

In addition, contrary to Ms. Sheehy's representation that the project was privately financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for less than 50 percent of the price that the Konefals paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Ms. Sheehy made accurate representations to the Konefals about the tenuous financial condition of Nouvelle and Natick Residence, the Konefals would not have closed on the purchase of the Unit. The Konefals already owned a house and were expecting the Unit to be a second residence and thus, they had no urgency to purchase. Their purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Ms. Sheehy.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My clients already preserved their foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. The Konefals have been given permission by the Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to pursue such claims in the event Natick Residence does not agree to make the Konefals whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Konefals prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Natick Residence/Ms. Sheehy's misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Konefals for the

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

prosecution of this action under Chapter 93A.  If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel.  In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP
### ATTORNEYS AT LAW
### 28 STATE STREET
### BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email: tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Herlitz and Weinreb:

This office has been retained by Sandra and Myron Levine (the "Levines") to represent them with respect to certain causes of action relating to their purchase of unit 708 South at Nouvelle at Natick ("Nouvelle"), 10 Nouvelle Way, Natick, Massachusetts (the "Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, made fraudulent misrepresentations to the Levines in order to induce them to purchase the Unit. The Levines now intend to seek relief for the damages they have suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of their purchase of the Unit. This letter is being sent to you as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, the Levines became interested in potentially purchasing a unit at the Nouvelle project well prior to actually signing a purchase and sale for the Unit. Melissa Flamburis ("Ms. Flamburis"), who worked under the supervision

Grant Herlitz, Manager
David Weinreb, Manager
June 13, 2011
Page 2

and control of Natick Residence, was the Levines' sales person throughout the process of the Levines' considering purchasing at Nouvelle. The Levines first met with Ms. Flamburis in the summer of 2007, when she told them that the South building at Nouvelle would be completed in the late spring or early summer of 2008. For that reason, the Levines expressed interest in the South tower rather than the North. During the sales process, Ms. Flamburis repeatedly told the Levines that sales were brisk and that the Levines had to start the buying process quickly if the Levines were to have any chance of purchasing a unit in Nouvelle.

Ms. Flamburis showed the Levines a very narrow choice of units in their price range and she told them that the 7th floor was almost completely sold – a representation of fact that turned out to be false. In reliance on Ms. Flamburis' representations that units were being sold quickly and that they had to act fast by making a 10% down payment no later than October 12, 2007, the Levines made the down payment and signed a purchase and sale agreement (the "P&S") for the Unit. The Unit is a two-bedroom, two-bath condominium with a terrace and a storage space and a parking space that are assigned by deed to the Unit.

Although the Levines signed the P&S in October 2007, Natick Residence informed them that the closing might not take place for many months due to the ongoing construction of Nouvelle. Indeed, as of the end of September 2008, nearly a year and a half later, the Levines still had not closed on the Unit. In the meantime, Natick Residence severely restricted the Levines access to viewing the progress of the construction at Nouvelle.

Shortly before the closing at the end of October 2008, the Levines expressed reservations to Ms. Flamburis and another Natick Residence employee, Jane Sheehy ("Ms. Sheehy"). The Levines were concerned about GGP's financial condition and whether GGP/Natick Residence would have the resources to complete the project and remain financially viable to manage it thereafter. Ms. Sheehy and Ms. Flamburis expressly reassured the Levines by making a series of misrepresentations to them, including without limitation the following:

- That Natick Residence and the Nouvelle project were in good financial shape and the entire project would be finished and managed in a first-class manner, with Ms. Sheehy going so far as act personally offended that the Levines would even question the financial condition of the project. Ms. Sheehy proceeded to tell the Levines that she would "not work for a company that was not completely ethical[.]"

- That 40 units at Nouvelle had already sold – a further attempt to confirm the viability of the project.

In reasonable reliance on these representations, both of which turned out to be false, the Levines closed on the Unit.

On November 12, 2008, barely two weeks after the Levines were induced to close, the general contractor for the project, Dimeo Construction Company ("Dimeo"), placed a lien on the

Grant Herlitz, Manager
David Weinreb, Manager
June 13, 2011
Page 3

project and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit. Plainly, Natick Residence was aware of the dire financial circumstances facing the project, including the impending Dimeo lien, when it made intentional misrepresentations to the contrary to the Levines. Natick Residence's intentional misrepresentations were grounded apparently in the wrongful motive of forcing the Levines to close before any liens were filed on the project. Natick Residence also pressured the Levines to close even though, unbeknownst to the Levines, the project was not only financially unsound, but physically unsafe as well. For example, there was no heat in the hallways (ultimately for six months – from November through winter and into the spring) as the air handlers had not been connected on the roof, elevators were totally unreliable, many smoke detectors were still wrapped in plastic due to construction dust, and the primary sewer ejector for the building did not have an operational back-up pump, so when it failed, sewerage backed up into the garage leaving cars sitting in raw waste. Mail could not be delivered for more than a month after the Levines moved in.

    In addition, contrary to Natick Residence's representations that the project was financially sound, when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for less than 50 percent of the price that the Levines paid based upon Natick Residence's misrepresentations.

    Had Natick Residence made accurate representations to the Levines about the tenuous financial condition of Nouvelle and Natick Residence, the Levines would not have closed on the purchase of the Unit. Their purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false assurances of Natick Residence.

    As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

    My clients already preserved their foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. The Levines have been given permission by the Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to pursue such claims in the event Natick Residence does not agree to make the Levines whole without the need for further legal action.

Grant Herlitz, Manager
David Weinreb, Manager
June 13, 2011
Page 4


In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Levines prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Natick Residence's misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Levines for the prosecution of this action under Chapter 93A. If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email:  tchapman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| | | |
|---|---|---|
| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re:  <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by Claire Sandell ("Ms. Sandell") to represent her with respect to certain causes of action relating to her purchase of 705 South at Nouvelle at Natick ("Nouvelle"), 10 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to Ms. Sandell in order to induce her to purchase the Unit. Ms. Sandell now intends to seek relief for the damages she has suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of her purchase of the Unit. This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence. This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, Ms. Sandell became interested in purchasing a unit at the Nouvelle project. Eventually, after several discussions with Natick Residence's sales personnel and other representatives, on June 29, 2007, Ms. Sandell signed a purchase and sale agreement (the "P&S") for the Unit – a three-bedroom, two-bathroom condominium with a total of 1,695 square feet. There is also a small balcony attached to the Unit, a storage cage on the fifth floor and two underground parking spaces that are assigned by deed to this Unit.

For several months prior to closing, Ms. Sandell was in constant contact with the sales office and Mr. Bartels. Ms. Sandell had agreed to participate in several newspaper articles and TV specials relating to the Nouvelle project, and therefore, visited the sales office 2-3 times a week prior to the closing of the Unit. Thereafter, after reading in the media about the serious financial difficulties that GGP was facing during the summer of 2008, Ms. Sandell inquired with Mr. Bartels on a regular basis regarding the financial health of Nouvelle in light of what appeared to be a potential GGP bankruptcy. By early October 2008, after reading the media accounts, Ms. Sandell had very strong reservations about going forward with the purchase of the Unit. In this time frame, she raised these concerns in conversations with Mr. Bartels and Nouvelle Sales Director Jane Sheehy ("Ms. Sheehy"). In response, Mr. Bartels and Ms. Sheehy repeatedly assured Ms. Sandell that the Nouvelle project was a separate, fully funded entity and that 38 to 40 units would be closing at the end of October.

On October 24, 2008, just ten days prior to the closing date for the Unit, Ms. Sandell read that GGP's stock had plummeted. In response, Ms. Sandell immediately contacted Mr. Bartels and Ms. Sheehy and again expressed that she was uncomfortable going forward with the purchase of her unit in light of the apparent financial problems facing GGP. Mr. Bartels and Ms. Sheehy dismissed Ms. Sandell's concerns and reassured her about the financial condition of Natick Residence and its parent and about the status of the Nouvelle project. They did so by making a series of misrepresentations, including without limitation the following:

- That Natick Residence and the Nouvelle project were not in any financial difficulty because the project was funded privately and not by GGP itself.

- That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick Residence/Nouvelle would not be affected or involved.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

Ms. Sandell reasonably relied upon Mr. Bartels' and Ms. Sheehy's representations. In addition, sales staff, who worked under Natick Residence/Mr. Bartels' supervision and control, represented to Ms. Sandell that some 38-40 units at Nouvelle were then already under contract. In the end only 17 purchasers closed on units – a significant decrease in actual purchasers and vital information that would have also affected Ms. Sandell's decision to go forward with her purchase. In reliance upon the representations of Mr. Bartels, Ms. Sheehy, and the Nouvelle sales staff, Ms. Sandell purchased the Unit on November 3, 2008 and paid cash of $980,290.00 for the Unit with a total upfront deposit of $97,790.00.

On November 12, 2008, less than two weeks after Ms. Sandell was induced to close without delay by Natick Residence's/Mr. Bartels' misrepresentations, the general contractor for the project, Dimeo Construction Company ("Dimeo"), placed a lien on the project and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit. Plainly, Natick Residence and Mr. Bartels were aware of the dire financial circumstances facing the project, including the impending Dimeo lien, when they intentionally misrepresented the financial condition of the project to Ms. Sandell. Natick Residence's/Mr. Bartels' intentional misrepresentations were grounded apparently in the wrongful motive of forcing Ms. Sandell to close before any liens were filed on the project. Natick Residence/Ms. Bartels also pressured Ms. Sandell to close even though, unbeknownst to Ms. Sandell, the project was not only financially unsound, but physically compromised as well. For example, there was no heat in the hallways (ultimately for six months – from November through winter and into the spring) as the air handlers had not been connected on the roof, elevators were totally unreliable, many smoke detectors were still wrapped in plastic due to construction dust, and the primary sewer ejector for the building did not have an operational back-up pump, so when it failed, sewerage backed up into the garage leaving cars sitting in raw waste. Mail could not be delivered for more than a month after Ms. Sandell moved in.

In addition, contrary to Mr. Bartels' representation that the project was privately financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for about half of the price that Ms. Sandell paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Mr. Bartels made accurate representations to Ms. Sandell about the tenuous financial condition of Nouvelle and Natick Residence, Ms. Sandell would not have closed on the purchase of the Unit. Her purchase of the Unit was based upon Ms. Sandell's believing that it was a good real estate purchase based upon the false assurances of Natick Residence/Mr. Bartels.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16 Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My client already preserved her foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. Ms. Sandell has been given permission by the Bankruptcy Court to pursue her claims in the appropriate non-bankruptcy arena. She intends to pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make Ms. Sandell whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if Ms. Sandell prevails at trial, she may be entitled to one or more of the following remedies, without limitation: rescission of her purchase of the Unit, her "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Mr. Bartels' misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by Ms. Sandell for the prosecution of this action under Chapter 93A. If forced to file suit, my client will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP
ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email:  tchapman@toddweld.com

TELEPHONE:  (617) 720-2626
FACSIMILE:  (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Aaron Bartels
General Growth Properties, Inc.
110 N Wacker Dr.
Chicago, Illinois 60606

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

| One Galleria Tower | 10 Nouvelle Way | c/o Corporation Service Co. |
| 13355 Noel Road, Suite 950 | Natick, MA 01760 | 84 State Street |
| Dallas, TX 75240 | | Boston, MA 02109 |

Re: <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Bartels, Herlitz and Weinreb:

This office has been retained by Arlene and Irvin Stiglitz (the "Stiglitzes") to represent them with respect to certain causes of action relating to their purchase of unit 1043 North at Nouvelle at Natick ("Nouvelle"), 40 Nouvelle Way, Natick, Massachusetts ("Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation Aaron Bartels ("Mr. Bartels"), made fraudulent misrepresentations to the Stiglitzes in order to induce them to purchase the Unit.  The Stiglitzes now intend to seek relief for the damages they have suffered as a result of these misrepresentations, relief which may include, without limitation, rescission of their purchase of the Unit.  This letter is being sent to Mr. Bartels, individually, and as former Senior Director of Development at General Growth Properties, Inc. ("GGP") and Natick Residence, and to Messrs. Herlitz and Weinreb as managers for Natick Residence.  This letter is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, the Stiglitzes became interested in purchasing a unit at the Nouvelle project. Eventually, after a number of meetings with Claude Hoopes, who was then the Nouvelle sales manager, and Mr. Bartels, on June 4, 2007 the Stiglitzes signed a purchase and sale agreement (the "P&S") for the Unit, a three-bedroom, three-bathroom condominium with a total of 2,017 square feet. There is also a terrace attached to the Unit, a storage cage and two underground parking spaces that are assigned by deed to this Unit.

In August 2008, the Stiglitzes became increasingly concerned about the financial problems of Natick Residence's then-parent, GGP. As a result, the Stiglitzes consulted with Mr. Bartels on several occasions beginning in August 2008 regarding how a potential GGP bankruptcy would affect GGP's ability to complete the Nouvelle project. In response, Mr. Bartels told the Stiglitzes that the Nouvelle project was fully funded and that it would be completed as originally presented.

Then, on October 22, 2008, the Stiglitzes met with Mr. Bartels to ask what the consequences would be if they did not close on their designated closing date of November 3, 2008. Mr. Bartels told the Stiglitzes that if they did not close on November 3, 2008, they would default on their purchase and forfeit their $121,590.00 deposit. Additionally, the Stiglitzes again asked Mr. Bartels how a GGP bankruptcy might impact Nouvelle.

In response, Mr. Bartels expressly sought to allay the Stiglitzes' concerns about the financial condition of Natick Residence and its parent and to reassure them about the status of the Nouvelle project. He did so by making a series of misrepresentations, including without limitation the following:

-   That Natick Residence and the Nouvelle project were not in any financial difficulty because the project was fully funded.

-   That Natick Residence and the Nouvelle project did not have any debt.

-   That the debt-free/privately funded nature of Natick Residence/Nouvelle meant that even if GGP filed bankruptcy, Natick Residence/Nouvelle would not be affected.

Not only did Natick Residence/Mr. Bartels make these false statements of fact to the Stiglitzes, the sales staff, who worked under Natick Residence's/Mr. Bartels' supervision and

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

control, represented to the Stiglitzes in September and October 2008 that more than 35 units at Nouvelle were then already under contract. In the end, only 17 purchasers closed on units – a significant decrease in actual purchasers and vital information that, if disclosed, would have also affected the Stiglitzes' decision to go forward with their purchase. In reasonable reliance upon the false representations of Natick Residence/Mr. Bartels, the Stiglitzes purchased the Unit for $1,225,835.00 with a total upfront deposit of $121,590.00.

On November 12, 2008, less than two weeks after the Stiglitzes were induced to close by Mr. Bartels' misrepresentations, the general contractor for the project, Dimeo Construction Company ("Dimeo"), placed a lien on the project and began taking money from subsequent unit sales as a condition of releasing the partial lien on each unit. Plainly, Mr. Bartels was aware of the dire financial circumstances facing the project, including the impending Dimeo lien, when he made intentional misrepresentations to the contrary to the Stiglitzes. Mr. Bartels pressured the Stiglitzes to close even though, unbeknownst to the Stiglitzes, the project was not only financially unsound, but physically unsafe as well. For example, there was no heat in the hallways (ultimately for six months – from November through winter and into the spring) as the air handlers had not been connected on the roof, elevators were totally unreliable, many smoke detectors were still wrapped in plastic due to construction dust, and the primary sewer ejector for the building did not have an operational back-up pump, so when it failed, sewerage backed up into the garage leaving cars sitting in raw waste. Moreover, Natick Residence cancelled the waterproofing project for the mechanical penthouse directly over the Unit, leaving the Stiglitzes' Unit directly threatened by the two 750 gallon hot water tanks above them.

In addition, contrary to Mr. Bartels' representation that the project was completely financed (and, therefore, not likely to be affected if GGP filed bankruptcy), when GGP declared bankruptcy in April 2009, Natick Residence and Nouvelle were dragged right into bankruptcy with the rest of GGP. Ultimately, Natick Residence was forced to resort to auctioning off the unsold units at Nouvelle under these distressed circumstances, with units comparable to the Unit being sold for less than 50 percent of the price that the Stiglitzes paid based upon Natick Residence's misrepresentations.

Had Natick Residence/Mr. Bartels made accurate representations to the Stiglitzes about the tenuous financial condition of Nouvelle and Natick Residence, the Stiglitzes would not have closed on the purchase of the Unit. Their purchase of the Unit was based upon their believing that it was a good real estate purchase based upon the false statements and assurances of Natick Residence/Mr. Bartels.

In addition to the foregoing, on November 11, 2010, only two years after the Stiglitzes moved to Nouvelle, one of the 750-gallon hot water tanks located above their Unit (with no automatic shutoffs, alarm system water containment barriers or adequate drainage) gave way,

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 4

causing hot water and later cold water to pour continuously through the building. This tank
failure flooded the Stiglitzes' unit – destroying their home and many of their personal
belongings. It was nearly 7 months before they could move back into the unit. Throughout their
purchase process, they had been assured that Nouvelle was a priority and a fully funded GGP
project. Recently, however, the Stiglitzes learned that Mr. Bartels processed a change order in
2008 prior to the Stiglitzes' November 3, 2008 closing which cancelled the waterproofing of the
Nouvelle North Tower Mechanical Penthouse. Cancelling this waterproofing was made for cost-
cutting purposes, was contrary to the representations of Natick Residence/Mr. Bartels, and was
contrary to construction standards as well as the applicable duty of care. The failure properly to
waterproof the mechanical penthouse led directly to the severe damage to the Stiglitzes'
property.

       The unfair and deceptive actions of Natick Residence relative to the Stiglitzes and
Nouvelle have, apparently, continued unabated. For example, as recently as May 23, 2011,
Attorney Aaron Grodin of Howard Hughes Corporation ("HHC"), Andrew Zeitman (Vice
President for HHC) and Steven Seltzer (consultant to HHC) called Mr. Stiglitz. These three
authorized representatives expressly threatened Mr. Stiglitz by telling him that if he did not agree
now to drop his claims relative to Natick Residence, HHC would use the $500,000 -$750,000
that they were obligated to spend on Nouvelle's deficiencies (including the Mechanical
Penthouse waterproofing) in order to defend against the Stiglitzes' claims instead. Threatening
to renege on existing obligations (which would expose the Stiglitzes to risk of further water
damage as well as the resentment of their neighbors) as a means of coercing the Stiglitzes to drop
valid claims is, of course, itself a violation of G.L. c. 93A.

       As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to
induce another to purchase real property may be held liable in fraud and under G.L. c. 93A. See,
e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16
Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property
fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of
the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass.
502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the
seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be
entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt,
16 Mass. App. Ct. 913.

       My clients already preserved their foregoing claims against Natick Residence and its
parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for
the Southern District of New York. The Stiglitzes have been given permission by the
Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to

Aaron Bartels
Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 5

pursue such claims in the event Natick Residence and Mr. Bartels do not agree to make the Stiglitzes whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Stiglitzes prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Natick Residence's/Mr. Bartels' misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Stiglitzes for the prosecution of this action under Chapter 93A. If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman

# TODD&WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

TYLER E. CHAPMAN
Direct Dial: (617) 624-4802
Email:  tchapman@toddweld.com

TELEPHONE:  (617) 720-2626
FACSIMILE:  (617) 227-5777
www.toddweld.com

June 13, 2011

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC

One Galleria Tower
13355 Noel Road, Suite 950
Dallas, TX 75240

10 Nouvelle Way
Natick, MA 01760

c/o Corporation Service Co.
84 State Street
Boston, MA 02109

Re:  <u>Nouvelle at Natick, Demand Letter Pursuant Massachusetts General Laws c. 93A</u>

Dear Messrs. Herlitz and Weinreb:

This office has been retained by Monika and Vineet Vermani (the "Vermanis") to represent them with respect to certain causes of action relating to their purchase of unit 403 South at Nouvelle at Natick ("Nouvelle"), 10 Nouvelle Way, Natick, Massachusetts (the "Unit"). Specifically, as will be more fully set forth below, Natick Residence LLC, f/k/a GGP Natick Residence LLC (collectively, "Natick Residence"), by and through its authorized agents and representatives, including without limitation, Sales Director Jane Sheehy ("Ms. Sheehy"), made fraudulent misrepresentations to the Vermanis in order to induce them to close on their purchase of the Unit. The Vermanis now intend to seek relief for the damages that they have suffered as a result of these misrepresentations – relief which may include, without limitation, rescission of their purchase of the Unit. This letter is being sent to you in your capacities as managers for Natick Residence and is a formal demand pursuant to Massachusetts General Laws Chapter 93A and the common law.

Natick Residence developed Nouvelle as a 215-unit condominium complex. At all times, Natick Residence marketed the units in Nouvelle as luxury condominiums of premium quality with the highest caliber of construction, details, services, and amenities. Natick Residences' marketing materials for Nouvelle are replete with such representations.

As a result of Natick Residence's marketing of Nouvelle, the Vermanis became interested in potentially purchasing a unit at the Nouvelle project 15 months prior to actually signing a

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 2

purchase and sale for the Unit.  Eventually, after several discussions with Natick Residence's sales personnel and other representatives, in March 2007, the Vermanis signed a purchase and sale agreement (the "P&S") for the Unit – a one-bedroom, one and one half-bathroom condominium with a total of 875 square feet.  There is also a storage cage and one underground parking space that are assigned by deed to this Unit.

Prior to signing the P&S for the Unit, the Vermanis had multiple conversations with the initial Sales Director for Nouvelle, Claude Hoopes ("Mr. Hoopes").  Mr. Hoopes made misrepresentations to induce the Vermanis to sign the P&S.  First, Mr. Hoopes misrepresented to the Vermanis that a cheaper unit which the Vermanis wanted to purchase was already under agreement.  This caused the Vermanis to sign the P&S for their unit, which was a more expensive unit.  The Vermanis later discovered that the cheaper unit they had desired was, in fact, available.  Second, Mr. Hoopes represented to the Vermanis that he had himself purchased a unit in the building and proffered this information to convince the Vermanis that the project was secure.  On information and belief, however, Mr. Hoopes never actually purchased a unit at the Nouvelle project.

Thereafter, during the year prior to closing on the Unit, the Vermanis regularly inquired about the status of the Nouvelle project with Ms. Sheehy.  The Vermanis expressed their concern during these conversations about the impact a potential GGP bankruptcy could have on the project and whether the project would be finished.  Specifically, the Vermanis inquired about the number of units sold, the progress of the construction and the funding for the Nouvelle project. In response, Ms. Sheehy expressly sought to allay the Vermanis' concerns about the financial condition of Natick Residence and about the status of the Nouvelle project.  Ms. Sheehy did so by making a series of misrepresentations, including without limitation the following:

- Natick Residence and the Nouvelle project were not in any financial difficulty because the project was fully funded.

- Natick Residence and the Nouvelle project were not in debt.

- Thirty to forty units of the Nouvelle project were under agreement.

Each of these statements of fact turned out to be false.  Had Natick Residence/Ms. Sheehy made accurate representations to the Vermanis about the tenuous financial condition of Nouvelle and Natick Residence, the Vermanis would not have closed on the purchase of the Unit.  Their purchase of the Unit was based upon and induced by the false factual statements and other assurances of Natick Residence/Ms. Sheehy.

As is well-settled in Massachusetts, a party who makes a misrepresentation of fact to induce another to purchase real property may be held liable in fraud and under G.L. c. 93A.  See, e.g., Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991); Brandt v. Olympic Constr., Inc., 16

Grant Herlitz, Manager
David Weinreb, Manager
Natick Residence LLC
f/k/a GGP Natick Residence LLC
June 13, 2011
Page 3

Mass. App. Ct. 913 (1983). A plaintiff who establishes that the seller of real property fraudulently induced the plaintiff to purchase the property may seek as a remedy its "benefit of the bargain" damages or rescission of the sale all together. See, e.g., Rice v. Price, 340 Mass. 502 (1960); Yorke v. Taylor, 332 Mass. 368 (1955). In addition, a party who establishes that the seller's fraudulent conduct was knowing and intentional in violation of G.L. c. 93A may also be entitled to multiple damages and an award of attorney's fees. See G.L. c. 93A, §§ 2, 9; Brandt, 16 Mass. App. Ct. 913.

My clients already preserved their foregoing claims against Natick Residence and its parent corporation by timely filing a proof of claim with the United States Bankruptcy Court for the Southern District of New York. The Vermanis have been given permission by the Bankruptcy Court to pursue their claims in the appropriate non-bankruptcy arena. They intend to pursue such claims in the event Natick Residence does not agree to make the Vermanis whole without the need for further legal action.

In light of the foregoing, under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. In tendering such reasonable offer, I suggest you bear in mind that, if the Vermanis prevail at trial, they may be entitled to one or more of the following remedies, without limitation: rescission of their purchase of the Unit, their "benefit of the bargain" damages (measured as the difference between what they paid for the Unit in reliance upon Ms. Sheehys's misrepresentations and the true value of what they received), out-of-pocket costs, multiple damages, and attorneys' fees. If you fail to make a reasonable settlement offer within thirty days, Chapter 93A provides that you may be liable for multiple damages and the reasonable attorney fees incurred by the Vermanis for the prosecution of this action under Chapter 93A. If forced to file suit, my clients will pursue the full value of all claims, including but not limited to multiple damages and attorney's fees.

While this letter is sent pursuant to Chapter 93A, it is without limitation of other and additional claims and causes of action that my clients may have, including without limitation claims under the common law.

I look forward to hearing from you or your counsel. In the meantime, please notify any insurance carrier of yours that may provide coverage for this claim.

Sincerely,

Tyler E. Chapman